Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2017 CO 97**

**No. 16SC184, <u>City of Arvada ex rel. Arvada Police Department v. Denver Health and Hospital Authority</u>—Prisons—Costs of Incarceration**

Arvada police arrested a severely injured man and sent him to Denver Health. Denver Health sued Arvada for the cost of care, claiming that section 16-3-401, C.R.S. (2017), which says that persons in custody "shall be . . . provided . . . medical treatment," required Arvada to pay the hospital for the detainee's care. The supreme court clarifies (1) that whether a statute provides a private right of action is a question of standing and (2) that the same test for a private right of action under <u>Allstate Insurance Co. v. Parfrey</u>, 830 P.2d 905 (Colo. 1992) applies for claims against both governmental and non-governmental defendants. Applying <u>Parfrey</u> to Denver Health's statutory claim here, the supreme court holds that section 16-3-401 does not provide hospitals a private right of action to sue police departments for the cost of providing healthcare to persons in custody. Accordingly, it concludes, the trial court erred by granting summary judgment to Denver Health on the statutory claim. The supreme court remands for consideration of Denver Health's unjust enrichment claim based on Arvada's statutory duty to provide care for persons in custody.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 97

### Supreme Court Case No. 16SC184
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA164

### Petitioners:

City of Arvada ex rel. Arvada Police Department,

v.

### Respondent:

Denver Health and Hospital Authority.

### Judgment Reversed
*en banc*
October 10, 2017

**Attorneys for Petitioners:**
Christopher K. Daly, City Attorney
  *Arvada, Colorado*

Vaughan & DeMuro
David R. DeMuro
  *Denver, Colorado*

**Attorneys for Respondent:**
Ruegsegger Simons Smith & Stern, LLC
Jeff C. Staudenmayer
  *Denver, Colorado*

**Attorneys for Amici Curiae The Cities of Black Hawk and Northglenn and the Towns of Hudson, Mountain View, and Parker:**
Hoffmann, Parker, Wilson & Carberry, P.C.
Corey Y. Hoffmann
Hilary M. Graham
  *Denver, Colorado*

**Attorneys for Amicus Curiae City and County of Denver:**
Kristin Bronson, City Attorney

T. Shaun Sullivan, Assistant City Attorney
Tracy A. Davis, Assistant City Attorney
Joshua L. Roberts, Assistant City Attorney
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Hospital Association:**
Polsinelli PC
Gerald A. Niederman
Ann McCullough
Bennett L. Cohen
  *Denver, Colorado*

**Attorneys for Amici Curiae Colorado Intergovernmental Risk Sharing Agency and the Cities of Lakewood and Aurora:**
Senter Goldfarb & Rice, LLC
Eric M. Ziporin
  *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**JUSTICE GABRIEL** concurs.
**JUSTICE COATS** concurs in the judgment in part, and **JUSTICE EID** joins in the concurrence in the judgment in part.
**JUSTICE MÁRQUEZ** does not participate.

¶1 When Arvada police officers responded to a reported domestic disturbance in Terry Ross's home, Ross slipped into a bedroom and shot himself. Severely injured but still alive, he needed immediate medical care. Officers radioed for an ambulance whose crew delivered him to Denver Health Medical Center, a public hospital. There, doctors treated Ross's wounds as Arvada officers kept watch over him. When Ross, and later his estate, could not pay for his care, Denver Health billed Arvada nearly $30,000. The question presented is essentially whether Arvada must pay the tab.

¶2 The trial court and court of appeals said yes; both read Colorado's "Treatment while in custody" statute as entitling Denver Health to relief. Relying on Poudre Valley Health Care Inc. v. City of Loveland, 85 P.3d 558 (Colo. App. 2003), the trial court decided the statute assigned police departments (or any agency that detains people) a duty to pay healthcare providers for treatment of those in custody. The court of appeals affirmed on essentially the same grounds.

¶3 We conclude the statute does not create any duty to a healthcare provider. We further conclude, however, that Denver Health's claim for unjust enrichment survives. Because that claim is contractual, we conclude the Colorado Governmental Immunity Act does not prohibit it. We therefore reverse the judgment of the court of appeals in part and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶4 Investigating a reported domestic disturbance, Arvada Police Officers Lechuga and Schlesser arrived at Terry Ross's home. He allowed them inside. After some conversation, he escaped into a bedroom where, Officer Schlesser worried, he may have

hidden a gun. She ran after him, drew her own gun, and yelled at him to stop. Reaching the bedroom door just as it was closing, the officer saw Ross holding what she thought might be a handgun and feared he might shoot her. She fired at him. The door swung shut. When Officer Schlesser reopened the door and began to explore the room, she discovered that although her shot had missed Ross, he had shot himself and was bleeding from his head.

¶5 Officer Schlesser radioed to say she had detained Ross and that he needed immediate medical attention for the gunshot wound. An ambulance transported Ross to Denver Health. Arvada officers accompanied him to the hospital, where they photographed and interviewed him. After Ross received treatment, an Arvada police officer remained outside the room until the end of his shift, and the Denver Sheriff's Department, as part of its routine duty for Denver Health's secure wing, monitored the room for the balance of Ross's brief stay.

¶6 The bill for Ross's care at Denver Health totaled just under $35,000.

¶7 About a month after he left the hospital, Ross committed suicide. When he died, he had not yet paid for his Denver Health treatment, but his estate contributed about $6,000, bringing the remaining total to about $29,000. Denver Health then billed that amount to Arvada.

¶8 Arvada refused to pay, and Denver Health sued the city to recover the funds. The hospital alleged two theories of liability: First, Colorado's "Treatment while in custody" statute, § 16-3-401, C.R.S. (2017), entitled it to recover Ross's remaining cost of care from Arvada, and second, the common law implied a contract requiring Arvada to

4

repay Denver Health. Arvada defended on three grounds: First, the statute did not create a private right of action; second, it received no benefit from Denver Health to support its implied-contract claim; and third, the Colorado Governmental Immunity Act ("CGIA"), § 24-10-106(1), C.R.S. (2017), barred Denver Health's claims because they could sound in tort.

¶9 The parties stipulated to a set of operative facts and both sought summary judgment, which the trial court granted in Denver Health's favor. The court reasoned that section 16-3-401 required Arvada to pay for Ross's care, and that it therefore entitled Denver Health to repayment. Because the trial court resolved the claim on statutory grounds, it did not reach Denver Health's equitable, implied-contract claim. As to Arvada's contention that the CGIA barred the suit, the trial court concluded otherwise, reasoning Denver Health's claims were contractual and therefore outside the CGIA's scope.

¶10 Arvada appealed. The division below, relying on Poudre Valley, concluded section 16-3-401 required Arvada to pay for Ross's medical expenses. Because the statute imposed a duty to provide medical care, the division reasoned, it similarly imposed a duty to pay for that care.

¶11 The division further rejected Arvada's arguments that the statute did not (1) express a clear intent to impose civil liability on government agencies for payment of medical care, or (2) create a private right of action for medical providers. Like the division in Poudre Valley, the division in this case reasoned that the traditional limits on court-created civil private rights of action did not apply because Denver Health did

5

not allege a statutory breach creating damages. Instead, the court of appeals observed, "[T]he hospital helped Arvada <u>fulfill</u> its statutory obligations by providing medical treatment to a person in Arvada's custody." <u>Denver Health & Hosp. Auth. v. City of Arvada ex. rel. Arvada Police Dep't</u>, 2016 COA 12, ¶ 36, ___ P.3d ___.

¶12    As to Arvada's contention that, irrespective of the statutory issue, the CGIA barred Denver Health's claims, the division again disagreed. It concluded that Denver Health's theory of liability, however characterized, sounded solely in contract—not tort—and thus the CGIA could not immunize Arvada from suit.

¶13    Concluding the trial court properly resolved the case in Denver Health's favor, the division upheld that court's grant of summary judgment. Arvada petitioned this court for certiorari. We granted the petition.[1]

## II. Standard of Review

¶14    This court reviews a grant of summary judgment de novo. <u>W. Elk Ranch, L.L.C. v. United States</u>, 65 P.3d 479, 481 (Colo. 2002). We also review de novo whether the CGIA bars a particular claim because that determination raises a question of statutory construction. <u>Robinson v. Colo. State Lottery Div.</u>, 179 P.3d 998, 1003 (Colo. 2008).

---

[1] We granted review of the following issues:

  1. Whether the court of appeals erred by creating a civil private right of action in the code of criminal procedure, benefitting medical providers against government entities, where no mention of any civil remedy against government exists.
  2. Whether the court of appeals erred in failing to follow Colorado Supreme Court law that a claim for unjust enrichment could lie in tort and is thereby governed by the Colorado Governmental Immunity Act.

6

## III. Analysis

¶15    We resolve the issues raised in three steps.  First, we clarify our framework for implied-private-right-of-action analysis, and then, applying that framework, we conclude section 16-3-401 does not create a claim entitling Denver Health to relief.  The statute does not identify a duty owed to healthcare providers, does not indicate a legislative intent to create a right of action, and does not suggest that imputing one would comport with the legislative scheme.  Second, we note that although Denver Health's statutory claim fails, its unjust-enrichment claim remains.  Third, because Denver Health's unjust-enrichment claim sounds in contract, we conclude the CGIA presents no bar to that claim.  Therefore, we reverse and remand for consideration of Denver Health's unjust-enrichment claim.

### A.  Section 16-3-401 Does Not Entitle Denver Health to Repayment

¶16    Both the trial court and the division below concluded section 16-3-401 entitles Denver Health to collect the remaining cost of Ross's care from Arvada.  We disagree.  Our analysis, though, begins with a detour in which we explain that courts must consider whether a statute creates a private right of action as a matter of standing, and that they must apply the same analysis irrespective of whether the alleged right of action reaches a government or private defendant.  Then, we outline the required analysis, apply that test, and conclude the statute does not create a private right of action.

## 1. Whether a Statute Creates a Private Right of Action Is a Question of Standing

¶17 Denver Health urges us to conclude section 16-3-401 entitles the hospital to a judgment against Arvada without first deciding whether the statute creates a claim a court can resolve. But we cannot avoid that preliminary issue, so we take it up now.

¶18 The law does not supply a remedy for every wrong, and the courts may redress a right abridged or a duty breached only if the plaintiff has standing—the right to raise a legal argument or claim. See City of Greenwood Vill. v. Petitioners for the Proposed City of Centennial, 3 P.3d 427, 436 (Colo. 2000). A court considering standing in effect asks, "Is a court the proper place to resolve this dispute?"

¶19 In Colorado, a plaintiff seeking to demonstrate standing must have suffered (1) an injury-in-fact to (2) a legally protected interest. Ainscough v. Owens, 90 P.3d 851, 855 (Colo. 2004) (citing Wimberly v. Ettenberg, 570 P.2d 535, 539 (Colo. 1977)). This two-element analysis—the Wimberly test—ensures that the power to create prospective laws remains vested in the General Assembly. Id. at 856. A court can often resolve a dispute, but so too can the legislature, and safeguarding each institution's integrity requires the judiciary to refrain from answering those questions better addressed by another branch of government. See Davis v. Passman, 442 U.S. 228, 253 (1979).

¶20 Under the Wimberly test, proving injury alone does not suffice. The plaintiff must hold a legal interest protecting against the injury alleged, and courts must therefore ask "whether the plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation." Ainscough, 90 P.3d at 856. Stated

8

differently, the court must conclude the injury is actionable. <u>Cloverleaf Kennel Club, Inc. v. Colo. Racing Comm'n</u>, 620 P.2d 1051, 1058 (Colo. 1980).

¶21 When a statute does not specify what constitutes an actionable injury, we look to the law of implied private rights of action to determine whether the statute might still create a claim conferring standing.[2] <u>See</u> <u>id.</u> We don't often find such a claim. To the contrary, our reluctance to speak over legislative silence unites our implied-private-right-of-action opinions.

¶22 Making that point nearly a half-century ago, we said, "If the General Assembly has the intent that [private parties] use [a] statute as the basis for civil liability, then its expression of this intent should be loud and clear, I.e., by authorizing the remedy. This is not a subject in which we should attempt to infer such a legislative intent." <u>Quintano v. Indus. Comm'n</u>, 495 P.2d 1137, 1139 (Colo. 1972). More recently, we have required a "clear expression" of legislative intent before installing a private right of action in a statute otherwise silent on the matter. <u>State v. Moldovan</u>, 842 P.2d 220, 227 (Colo. 1992) (discussing <u>Quintano</u>, 495 P.2d at 1138–39 and <u>Bd. of Cty. Comm'rs v. Moreland</u>, 764 P.2d 812, 818–19 (Colo. 1988)).

---

[2] We do not intend for this observation to cast doubt on our well-established law regarding taxpayer standing, a doctrine not implicated here. <u>E.g.</u>, <u>Conrad v. City and Cty. of Denver</u>, 656 P.2d 662, 668 (Colo. 1982) (observing taxpayers enjoy an "economic interest in having their tax dollars spent in a constitutional manner" and that unconstitutional spending can therefore contribute to injury-in-fact under the <u>Wimberly</u> test).

## 2. The Same Implied-Private-Right-of-Action Analysis Applies to Governmental and Non-governmental Defendants

¶23    We have expressed the same concerns no matter the legal theory and no matter the defendant.   Although our implied-private-right-of-action cases typically concern torts, e.g., Moldovan, 842 P.2d at 226–27, we have analyzed other implied statutory claims as well, e.g., Bd. of Cty. Comm'rs v. Pfeifer, 546 P.2d 946, 948–49 (Colo. 1976) (holding statute did not create claim to set aside improper conveyance).   We similarly hesitate to imply a private right of action irrespective of whether the defendant is a state actor or a private party.   See Moldovan, 842 P.2d at 226–27 (state actor); Allstate Ins. Co. v. Parfrey, 830 P.2d 905, 910 (Colo. 1992) (private party).

¶24    To be sure, some of our earlier cases suggested a two-track analysis—one for governmental defendants and another for private defendants—perhaps as the vestige of a time when sovereign immunity remained a question for the courts.   But those paths have since converged.   So, although in Parfrey we addressed our analysis to "nongovernmental defendants," 830 P.2d at 911, later that year, we conducted the functional equivalent of that analysis with the state as the defendant in Moldovan, 842 P.2d at 226–27.   And in Gerrity Oil & Gas Corp. v. Magness, 946 P.2d 913, 923 (Colo. 1997), a private-defendant case, we drew from both our governmental- and private-defendant opinions without noting any distinction—a distinction we perceive as existing more in word than in deed.   We therefore take this opportunity to make

10

explicit the approach implicit in our opinions: The same implied-private-right-of-action analysis applies irrespective of the defendant's governmental status.[3]

### 3. Under the Parfrey Test, Section 16-3-401 Does Not Create an Implied Private Right of Action

¶25 As with all matters of statutory interpretation, our fundamental task must be to discern and effectuate the legislature's intent. When, as here, "a claimant alleges that a statute, ordinance, or regulation implicitly creates a private right of action, the critical question is whether the legislature intended such a result." Magness, 946 P.2d at 923.

¶26 Generally, if the legislature includes a remedy in the statute at issue, we will conclude it did not intend for the courts to create others. See Parfrey, 830 P.2d at 910; Pfeifer, 546 P.2d at 948–49. But if the statute "is totally silent on the matter of remedy," then the court "must determine whether a private civil remedy reasonably may be implied." Parfrey, 830 P.2d at 910.

¶27 Answering that question requires the court to examine three factors: (1) "whether the plaintiff is within the class of persons intended to be benefitted by the legislative enactment"; (2) "whether the legislature intended to create, albeit implicitly, a private right of action"; and (3) "whether an implied civil remedy would be consistent with the purposes of the legislative scheme." Id. at 911. Only after a court has determined a

---

[3] Two years ago, we reached the same conclusion in Taxpayers for Public Education v. Douglas County School District, 2015 CO 50, 351 P.3d 461 (2015). The Supreme Court subsequently vacated that opinion, however, in Douglas County School District v. Taxpayers for Public Education, 137 S. Ct. 2327 (2017). Because we perceive that decision as unrelated to our implied-private-right-of-action analysis, and because our vacated opinion no longer holds precedential value, we have revisited this issue and reach the same conclusion.

statute has satisfied these factors can it conclude the legislature clearly expressed its intent to create a cause of action conferring standing on the claimant.

¶28     Here, the parties dispute whether we should read a private right of action into the following language:

> Persons arrested or in custody shall be treated humanely and provided with adequate food, shelter, and, if required, medical treatment. Anyone receiving medical treatment while held in custody may be assessed a medical treatment charge as provided in section 17-26-104.5, C.R.S.

§ 16-3-401(2). Because the statute does not already identify a remedy for breach of its provisions, we begin with the Parfrey analysis.[4]

¶29     The case for a claim falters from the first step: Section 16-3-401 does not reveal legislative intent to benefit healthcare providers like Denver Health. Instead, titled "Treatment while in custody," it describes the duties owed to a person in custody, medical care numbering one among several. Id. And that section appears within a larger enactment concerning "Rights of persons in custody." Tit. 16, art. 3, pt. 4, C.R.S. (2017). Both that section and the larger enactment focus solely on the rights and duties of a confining state entity with respect to the person in its custody—not on the third parties who might incidentally assist a detaining government in fulfilling its statutory duties.

---

[4] Although section 16-3-401(2) allows a confining entity to assess a treatment charge as provided in section 17-26-104.5, C.R.S. (2017), that remedy concerns a duty distinct from the one alleged here. That is, although section 17-26-104.5 plausibly places on a detainee the duty to repay a county jail for treatment the jail provided on his behalf, it does not illuminate whether the legislature intended to create (1) a duty requiring local governments to repay medical providers or (2) a remedy for the breach of that duty.

¶30　As to Parfrey's second factor, the legislature's silence regarding any duty owed to medical providers suggests it did not intend to create a right of action in favor of those providers. Moreover, the legislation here lacks other indicia of intent to create a private right of action.

¶31　In Moldovan, 842 P.2d at 221, a motorist injured after crashing into a cow on a state highway asked us to impute a private right of action into Colorado's Fence Law. (That law required the state highway department to erect fencing to prevent errant animals from venturing onto its roads. Id. at 225–26.) We concluded the legislature intended for the statute to create a private right of action against the state because (1) the state owed a duty directly to the plaintiff and (2) the legislature had waived sovereign immunity for dangerous conditions on public roads. Id. at 228.

¶32　Similarly, in Parfrey, 830 P.2d at 911, we concluded the legislature implicitly intended to create a private right of action for an insured against his insurance company when (1) doing so would incentivize the insurer to perform its express statutory obligation to the insured, and (2) failing to create a cause of action would have left an insured without any of the benefits promised under the statute.

¶33　Here, at most, the legislature has chosen against extending sovereign immunity to contractual claims. See § 24-10-106(1); Colo. Dep't of Transp. v. Brown Grp. Retail, Inc., 182 P.3d 687, 690–91 (Colo. 2008). But it has not created a duty to medical providers similar to the state's duty to motorists in Moldovan or the insurer's duty to the insured in Parfrey. See § 16-3-401.

¶34     Furthermore, we need not find a right of action for hospitals to ensure the detaining government fulfills its duty to supply its detainees with medical care. As Denver Health explains, federal law requires it to treat patients needing emergency care and prevents it from asking whether or how the patient will pay. See 42 U.S.C. § 1395dd(a), (b) (2016). Finding a private right of action, then, wouldn't change the hospital's decision to provide care or the city's ability to procure care in an emergency. In other, less dire situations, a government could contract with a provider for the care it must deliver—and if it opted not to pay, the case would be based on the contract, not the statute. Thus, we cannot say that to ensure a detainee receives the care the statute promises him we must impute a private right of action for hospitals.

¶35     Finally, we cannot conclude that imputing a private right of action would be consistent with the purposes of the legislative scheme. The provision of section 16-3-401 at issue was introduced in the 1972 enactment of the Colorado Code of Criminal Procedure. Ch. 44, sec. 1, § 39-3-401, 1972 Colo. Sess. Laws 190, 202. The overall purpose of the Code is "to provide for the just determination of every criminal proceeding." § 16-1-103, C.R.S. (2017). Implementing section 16-3-401 served that broad purpose by codifying the common law rule that prisoners must be cared for by the public who sanctions their detention. See, e.g., Spicer v. Williamson, 132 S.E. 291, 293 (N.C. 1926) ("It is but just that the public be required to care for the prisoner, who cannot, by reason of the deprivation of his liberty, care for himself.").[5] It likewise

---

[5] This rule has since been recognized as constitutionally required under the Eighth Amendment for convicted prisoners, Estelle v. Gamble, 429 U.S. 97, 103 (1976), and

14

served the Code's more specific purpose of preserving "the fundamental human rights of individuals." § 16-1-103. These purposes don't jibe with an intent to create a private right of action for medical providers.

¶36 We therefore decline to read a private right of action into section 16-3-401 and disapprove of the analysis below concluding otherwise. We similarly overrule Poudre Valley to the extent it conflicts with our conclusion here.

## B. Denver Health Might Still Recover on a Theory of Unjust Enrichment

¶37 Although we conclude that the court of appeals erred in finding section 16-3-401 creates a private right of action, Denver Health could still prevail on its implied-contract/unjust-enrichment claim. As a judicially created, equitable cause of action, an unjust-enrichment claim does not depend on any contract, written or oral, but instead arises from a "contract implied in law." Lewis v. Lewis, 189 P.3d 1134, 1141 (Colo. 2008) (quoting DCB Constr. Co. v. Cent. City Dev. Co., 965 P.2d 115, 119 (Colo. 1998)). To recover under an unjust-enrichment theory, a plaintiff must prove three elements: "(1) [T]he defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." Id. Denver Health argues that Arvada received a benefit at Denver Health's expense because the statute obligated Arvada to provide the medical treatment that Denver Health provided to Ross. Neither the trial court nor the court of appeals reached this claim, and we decline to do so in the first instance.

under the Due Process Clause for pretrial detainees, City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).

15

¶38 So, the implied-contract/unjust-enrichment claim remains, but is it barred by the CGIA? We turn now to that question.

## C. The Colorado Governmental Immunity Act Does Not Bar Denver Health's Claim

¶39 The CGIA bars public liability for all claims for injury that lie in tort or could lie in tort, unless the claim falls within an exception to that immunity. § 24-10-106(1); Robinson, 179 P.3d at 1003. The CGIA does not, however, grant immunity to public entities for non-tort claims, including claims based on "contractual relations or a distinctly non-tortious statutorily-imposed duty." Brown Grp., 182 P.3d at 691.

¶40 The key question, then, is whether the claim here lies in tort or could lie in tort. To answer it, we look first to "the nature of the injury and the relief sought" in the case at bar. Robinson, 179 P.3d at 1003. If the alleged injury requiring relief results from tortious conduct or breach of a tort duty, then, it likely falls within the CGIA, even if the claimant has characterized its cause of action as contractual. Id. at 1003, 1005.

¶41 Applying these considerations to the unjust-enrichment claim discussed above, we conclude it does not and cannot lie in tort, and thus the CGIA presents no bar to suit. Arvada offers only an implausible hypothetical to support its contention that the facts here amount to a tort claim—that Denver Health could have argued Arvada misrepresented its intention to pay for Ross's care and thereby induced the hospital to care for him. But as we observed above, federal law already required Denver Health to treat Ross. And once he arrived on the hospital steps, Arvada's representations no longer dictated whether Ross would receive care. Regardless, the facts do not disclose

16

misrepresentation. When the hospital presented an Arvada Officer with a "Guarantee of Payment for Patient/Inmate" form, the officer signed it but noted next to the medical expenses, "suspect is responsible—he shot self."

¶42 We will not shoehorn contractual facts into a tort theory. See id. at 1007 (explaining that we apply a "case-by-case analysis" to determine whether an unjust enrichment claim could lie in tort); cf. Bd. of Cty. Comm'rs v. DeLozier, 917 P.2d 714, 717 (Colo. 1996) (holding estoppel claim could not lie in tort where "the facts that support [the] claim could not support a claim for fraud or misrepresentation"). Denver Health, by virtue of its statutory obligation, performed a service normally covered under contract. Arvada never promised to pay for that service, and has in fact refused to pay, but it may have received a benefit. We therefore concluded above that the law supplies a relationship that could require Arvada to compensate Denver Health for Ross's care—a relationship we described as arising from a "contract implied in law." Supra, maj. op. at ¶ 37. This equitable claim therefore more closely resembles one sounding in contract and cannot lie in tort. As a result, the CGIA does not stand in its way.

## IV. Conclusion

¶43 Colorado's "Treatment while in custody" statute does not create a claim a court may hear, in large part because it does not create any duty owed to a healthcare provider, much less a claim to recover for a breach of that duty. Still, having concluded as much, we further conclude that Denver Health's request for relief potentially finds purchase in the equitable remedy of unjust enrichment. And because Arvada may have

17

had a statutory duty to care for Ross that it placed on Denver Health—an institution which could not refuse the task—the district court should address whether it would be unjust for Arvada to retain the benefit, if any, of Denver Health's performance without paying for it. Finally, because that remedy is contractual and could not lie in tort, we conclude the Colorado Governmental Immunity Act does not stand in its way. We therefore reverse the judgment of the court of appeals to the extent it held the statute supplied a right of action to Denver Health, and we remand for further proceedings consistent with this opinion.

**JUSTICE GABRIEL** concurs.
**JUSTICE COATS** concurs in the judgment in part, and **JUSTICE EID** joins in the concurrence in the judgment in part.
**JUSTICE MÁRQUEZ** does not participate.

JUSTICE GABRIEL, concurring.

I join the majority's opinion in full.  I write separately, however, to explain why I believe that the conclusion that the law dictates with respect to section 16-3-401(2), C.R.S. (2017), may lead to unfair results and thus cries out for legislative clarification.

## I.  Analysis

The principal issue in this case boils down to this: when Arvada brought a person in its custody to Denver Health for treatment and Denver Health provided such treatment, does section 16-3-401(2) require Arvada to pay for the cost of that treatment, or should Denver Health, and ultimately Denver taxpayers, bear this cost?

In my view, the intuitive answer to this question is clear: Arvada, as the party that requested the treatment, should pay, just like it must pay for the adequate food and shelter that section 16-3-401(2) requires it to provide to persons who are arrested or in its custody.  I do not believe that anyone disputes that Arvada would be required to pay for medical treatment if that treatment were provided to a person in custody in an Arvada institution.  I see no reason why the result should be different were Arvada to transport the same person to Denver Health for treatment.  The person remains in Arvada's custody, and the statutory duty to provide treatment remains the same.  See § 16-3-401(2).  Indeed, concluding that Denver Health must bear the costs in such a scenario creates a perverse incentive for cities having custody over persons in need of treatment to transport such persons to Denver Health in order to avoid incurring the costs.  Such a result makes little sense to me, and it seems particularly unjust to Denver

1

taxpayers, who could end up bearing costs that should rightly be borne by the taxpayers of the cities holding the persons in need of treatment.

¶47 Nonetheless, under existing law, I cannot conclude that section 16-3-401(2) evinces a clear legislative intent to allow Denver Health to assert a statutory claim for the costs at issue.

¶48 We have long held that we will not infer a private right of action based on a statutory violation unless we discern a clear legislative intent to create such a cause of action. See, e.g., Gerrity Oil & Gas Corp. v. Magness, 946 P.2d 913, 923 (Colo. 1997); Bd. of Cty. Comm'rs v. Moreland, 764 P.2d 812, 817 (Colo. 1988); Quintano v. Indus. Comm'n, 495 P.2d 1137, 1139 (Colo. 1972).

¶49 Here, I cannot say that section 16-3-401(2) evinces the requisite clear legislative intent to recognize a statutory cause of action. This is particularly true given that section 16-3-401(2) itself expressly provides for the assessment of costs to the person receiving treatment. See § 16-3-401(2) ("Anyone receiving medical treatment while held in custody may be assessed a medical treatment charge as provided in section 17-26-104.5, C.R.S."); see also § 17-26-104.5(3), C.R.S. (2017) ("When a person is held in custody in a county jail, the person shall be primarily responsible for the payment of the cost of medical care provided to the person for a self-inflicted injury or a condition that was preexisting prior to the person's arrest and shall be charged for the medical care by the provider of care.").

¶50 The fact that in section 16-3-401(2), the General Assembly assessed certain costs to persons receiving treatment shows that the legislature knew how to allocate the

burden of payment when it intended to do so. In these circumstances, I cannot read into section 16-3-401(2) a clear legislative intent to require Arvada to bear the costs in the scenario presented in this case.

¶51 In reaching this conclusion, I am unpersuaded by Denver Health's assertion that cases like <u>Gerrity Oil</u>, <u>Moreland</u>, and <u>Quintano</u> are distinguishable because they concerned <u>breaches</u> of statutory duties whereas in the present case, Denver Health assisted Arvada in <u>complying</u> with its statutory duty. Although I acknowledge this distinction, I do not believe that our case law regarding implied statutory rights of action has drawn so fine a line. In any event, the question of whether we may infer from a statute a private right of action must turn on the legislature's intent, and here, it is what I perceive to be a lack of clarity as to the legislature's intent that compels me to concur in the majority's decision.

## II. Conclusion

¶52 For the foregoing reasons, I believe that settled law requires me to conclude that section 16-3-401(2) does not support Denver Health's statutory claim to recover the costs of services that it provided to Mr. Ross. It is not clear to me, however, that this is the legislature's intended result, particularly given the inequitable outcomes that could flow from such a conclusion.

¶53 Accordingly, although I join in the majority's opinion, I echo the sentiments expressed by Judge Vogt in her special concurrence below that the issues in this case cry out for resolution by the General Assembly. <u>Denver Health & Hosp. Auth. v. City of</u>

3

<u>Arvada ex rel. Arvada Police Dep't</u>, 2016 COA 12, ¶ 50, ___ P.3d ___, ___ (Vogt, J.,

specially concurring).  I hope it will take up the mantle.

JUSTICE COATS, concurring in the judgment in part.

¶54 Unlike the majority, I would reverse the judgment of the court of appeals and order that the case be returned to the district court for entry of an order granting Arvada's motion for summary judgment. I do not believe the judgment of the court of appeals implicates our jurisprudence concerning the statutory creation of private rights of action at all, much less requires us to separately address the question of standing. Furthermore, I would find that section 16-3-401 of the revised statutes not only fails to impose upon Arvada a duty to bear the ultimate cost of Ross's medical treatment but, in fact, expressly absolves Arvada of any such responsibility. And finally, even if the statute actually did impose such a duty on custodians, as the court of appeals held, I would find it to be a duty implied in law, for the breach of which and corresponding damages for which the assertion of governmental immunity would be available. I therefore do not join the majority opinion, and I concur only in that portion of its judgment reversing the judgment of the court of appeals.

¶55 Notwithstanding Arvada's characterization, I believe the court of appeals finds a statutory duty of custodians to shoulder the expense of caring for those in its custody but not a statutorily created right of action by providers against that custodian. While I disagree that the statute imposes liability on custodians for this expense, I do so from a simple construction of sections 16-3-401(2) and 17-26-104.5.

¶56 I believe the majority's analysis goes awry from its very inception by understanding Denver Health to be claiming, and the court of appeals judgment as upholding, an entitlement to a statutorily created, implied private right of action for the

1

violation of a statutory obligation. Our jurisprudence upon which the majority relies, see, e.g., Allstate Ins. Co. v. Parfrey, 830 P.2d 905 (Colo. 1992); Bd. of Cty. Comm'rs v. Moreland, 764 P.2d 812 (Colo. 1988), addresses the question whether the violation of a statutorily or administratively imposed obligation was intended by the enacting body not only to have consequences in terms of governmental enforcement but also to permit a private action by the intended beneficiaries of that obligation. Denver Health, however, makes no claim to a statutorily created private right of action, asserting instead merely a claim in the nature of restitution for satisfying or helping to satisfy Arvada's duty to provide medical treatment for those in its custody. By the same token, the court of appeals expressly distinguishes our private right of action jurisprudence from its holding on the grounds that it does not find any violation of what it interprets to be Arvada's statutorily imposed duty of care, but simply that the statute implicitly imposes upon it a responsibility to bear the costs of such care, by whomever it is provided.

¶57    Rather than the creation of a private right of action, the majority should have been concerned with the question whether the clear duty of law enforcement authorities to care for persons in their custody, whether imposed solely by statute or already existing at law, implies an obligation to bear the cost of medical treatment provided those persons, such that anyone providing that medical treatment would have a claim, in the nature of restitution or unjust enrichment, for the recovery of its costs. Whether the custodian would be expressly obligated to make restitution by the relationship alone or, if not, that it would simply be unjust to permit the custodian to retain the

2

benefit it received as the result of another having provided such treatment, any entitlement to reimbursement by a provider would necessarily be dependent upon the custodian's having received a benefit, which in turn would be dependent upon the exclusivity of the custodian's obligation to provide medical care for its prisoners and therefore its obligation to bear the cost of that care. Section 16-3-401(2) in no way implies that custodians will be liable for the costs of medical care provided to persons in their custody; to the contrary, it specifies that the person in custody himself shall be ultimately responsible for the cost of such care, which may be assessed against him as provided by statute. §16-3-401(2), C.R.S. (2017) ("Anyone receiving medical treatment while held in custody may be assessed a medical treatment charge as provided in section 17-26-104.5, C.R.S.").

¶58 While I agree with the majority's conclusions that section 16-3-401 does not identify any duty of custodians to healthcare providers whatsoever or relieve those providers of any separate duties they clearly have to treat patients needing emergency care, without regard for payment, maj. op. ¶¶ 33–34, I do not agree that these conclusions derive in any way from our statutorily created private right of action jurisprudence, or even that the question whether a private right of action was intended necessarily implicates the doctrine of standing. While the question whether a particular claimant may bring a particular action may be said to involve standing, in the mundane sense that any party asserting a claim must have standing to do so, the question whether a private right of action has been statutorily created does not always implicate

3

the doctrine of standing, and in <u>Parfrey</u> and those cases relying on it, we have not addressed the creation of a private right of action in terms of the standing doctrine.

¶59 For the very reason that the statute not only fails to identify a duty owed to healthcare providers but actually makes clear that the inmate being treated ultimately bears the obligation for his own medical expenses, I also disagree with the majority's remand for consideration of Denver Health's claim of unjust enrichment. Arvada could have benefitted from Denver Health's medical services, a necessary element of any claim of unjust enrichment, only to the extent that Arvada was ultimately responsible for the cost of the health care. In the absence of any such responsibility, Arvada could not have been unjustly enriched.

¶60 Finally, even if the issue of unjust enrichment were not already disposed of for this reason, I disagree with the majority's determination that Denver Health's unjust enrichment claim would not be subject to our statutory provisions for governmental immunity because it is based on "contractual relations" or "contractual facts." Maj. op. ¶¶ 39, 42. While the majority does not appear to repeat the mistake of the court of appeals in categorizing all implied contracts, including those implied in law along with those implied in fact, as contractual rather than tortious in nature, <u>see</u> <u>Robinson v. Colo. State Lottery Div.</u>, 179 P.3d 998, 1003 (Colo. 2008); <u>see also</u> <u>Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.</u>, 182 P.3d 687, 691 (Colo. 2008), it nevertheless appears to suggest that the officer's signature on a hospital form implicates promissory estoppel or some other contract-related, rather than tort-related, claim. Maj. op. ¶¶ 41–42. As Denver Health itself conceded, the signed form was irrelevant and implied nothing about its

4

claim for unjust enrichment. Whatever may have been the majority's rationale for finding that the claim could not lie in tort, I would find that even if the statutory interpretation of Denver Health and the court of appeals were correct, the duty at issue in section 16-3-401 would be one of general care, deriving not from any implicit agreement or promise on the custodian's part but strictly from its special relationship with the persons restrained in its custody.

¶61 Despite fundamentally disagreeing with almost all of the majority opinion, I share with it a common conclusion that section 16-3-401(2) does not impose upon custodians any duty whatsoever with regard to healthcare providers. I therefore respectfully concur in that part of its judgment.

I am authorized to state that JUSTICE EID joins in this concurrence in the judgment in part.